### Thomas L. Thruston *vs.* Daniel McF. Thornton.

Where a conversation is relied upon as proof of an agreement, it is for the jury to
decide, whether such an assent of the minds of the parties took place, as to
constitute a valid contract, or whether what passed between them was a loose
conversation, not understood or intended as an agreement.

This was an action of assumpsit to recover compensation
for services, rendered by the plaintiff as a broker, in selling
or aiding to sell certain real estate belonging to the defendant.
The declaration contained the common money counts, a bill
of particulars, and a special count. The cause was tried in
the court of common pleas, before *Wells,* C. J.

The bill of particulars set forth a claim by the plaintiff
against the defendant of the sum of one thousand dollars and
interest, as a commission of five per cent, "as per contract,
for selling his farm called Wood Park, in Virginia, which was
sold to Marcus Bull, Esq.," through the plaintiff's agency,
for twenty thousand dollars.

In the special count, the plaintiff alleged, in substance,
8*

that, in consideration that at the request of the defendant, he would find a purchaser for and sell and dispose of the defendant's farm above mentioned, the defendant promised to pay him five per cent of the amount for which he should sell the same, as a commission for his services ; and that he, confiding in the defendant's promise, did find a purchaser for the estate, for the sum of twenty thousand dollars, to whom the defendant sold and conveyed the same, and received therefor the said sum.

The plaintiff claimed to recover, *first,* as upon a special contract, on the part of the defendant, to pay him a commission of five per cent on the sum for which the estate should be sold ; or, *secondly,* if that ground should not be sustained by the evidence, then, a reasonable compensation for his services in effecting the sale.

In order to prove the special agreement relied on by the plaintiff, he introduced the deposition of Cary Selden, who testified, " that, some time in the fall of 1840, or early in the following winter, the defendant was in the city of Washington, and placed in the hands of the deponent a written schedule of certain real and other property, valued at twenty-two thousand one hundred and thirty dollars, with a view of having the same sold ; — that some short time thereafter the defendant came into the office occupied jointly by the deponent and the plaintiff, on which occasion, the deponent, at the request of the plaintiff, introduced the latter to the defendant, when the sale of the estate alluded to became the subject of conversation ; — that, in the course of the conversation, the plaintiff inquired of the defendant, if he would pay a commission for effecting a sale of the property, to which the defendant replied, that he would pay a commission to any person, who could effect a sale of the property, at the price mentioned in the schedule ; — and that this deponent caused a copy of the schedule to be taken for the use of the plaintiff."

It was also testified, on behalf of the plaintiff, that he did

recommend the estate to Marcus Bull, who called upon the defendant, and purchased the estate for the sum of twenty thousand five hundred dollars.

It appeared in evidence, that the plaintiff was an attorney at law, and, in connection with his business as an attorney, acted as a real estate broker. But, it did not appear, that, at the time of the interview, or at any time prior to the sale of the estate, the defendant knew that the plaintiff ever acted as a broker, or that he was informed that the purchaser was sent to him by the plaintiff.

The defendant contended, and introduced evidence tending to show, that no such conversation as was testified to by Selden ever took place, and that he never gave the plaintiff any written description of the estate.

In relation to the special count, the judge instructed the jury, that if they should be satisfied, that the conversation testified to by Selden took place between these parties, then, in order to determine whether the defendant was liable in the present action, it would be necessary for the jury to understand what constituted a legal and binding contract; and, that, so far as the matters in difference in this case were concerned, it was only necessary for them to fix distinctly in their minds the following part of the definition of a legal contract:

" A contract implies the assent of two minds. This idea is often expressed by the phrase, It takes two to make a bargain. Or, to state it in other words, it must be understood between the parties, that the one party has made an offer, and that the other has accepted it. If one party should make an offer and the other party should not accept it, there would be no contract. There is sometimes an apparent exception to this rule, but it is only apparent. Thus, if a person should put forth an advertisement, offering a reward to any one who would recover lost property; this offer is to no one in particular and no one accepts it at the time it is made. But the meaning of the offer is, that it is made to whomsoever will act upon it; and it is an implied part of the offer, that time

shall be afforded to any one who chooses to accept it ; and, if a person, before the offer is withdrawn, does that which by the terms of the offer will entitle him to the reward, his so acting upon the offer constitutes an acceptance of it, and the party making the offer is bound to fulfil his promise. But, when the parties are face to face, to constitute a contract, the one must offer and the other accept ; unless where it is a part of the agreement, that time shall be given to the person to whom the offer is made, to determine whether he will accept or not, in which case, the time given makes a part of the offer."

In view of these instructions, the jury were directed to inquire, whether it was proved, that, at the interview referred to, the minds of the parties met and they made a legal and binding contract ; or, whether the transaction was, as contended by the defendant, a loose conversation not understood or intended by them as an agreement ; and, as a test, the jury were directed to inquire and determine, whether, when the parties separated, it was understood between them, that the plaintiff should do or attempt any thing for the defendant, in relation to the sale of his estate, in consequence of the conversation which had taken place.

The jury, under these instructions, rendered a verdict for the defendant ; and the plaintiff thereupon filed exceptions.

*H. H. Fuller & R. F. Fuller*, for the plaintiff, argued that the instructions were wrong, as to the necessity of a formal acceptance of an offer made when the parties were face to face ; and that the jury should have been instructed, that if the plaintiff acted in consequence of the defendant's offer, the former was entitled to recover. *Williams* v. *Carwardine*, 5 Carr. & P. 566, 574 ; *Same Case*, 4 Barn. & Adol. 621 ; *Lancaster* v. *Walsh*, 4 Meeson & Welsby, 16, 22 ; *Murray* v. *Currie*, 7 Carr. & P. 584 ; *Horford* v. *Wilson*, 1 Taunt. 12 ; 20 Am. Jurist, 19. The defendant took less than the price stipulated, but that was no reason why the plaintiff should be deprived of his commission.

*J. Dana*, for the defendant, cited Rolle's Abr. Action of

the Case, pl. 1 ; Comyn's Dig. Action of the Case upon Ass. T. 2.

WILDE, J. On a careful examination of the instructions to the jury, the court have been unable to find any misdirection, or any remarks tending to mislead the jury in their consideration of the evidence. Certainly, the remarks of the judge as to the definition of a legal contract, and as to the necessary requisites to constitute such a contract, were, we think, clearly correct. The jury were then directed to consider the evidence, and to decide whether, " at the interview between the parties, their minds met, and they made a legal and binding contract ; or, whether the transaction, as was insisted by the defendant, was a loose conversation, not understood or intended by them as an agreement." We are of opinion, that this direction was entirely correct. It was for the jury to decide, what was the meaning and intention of the parties. The conversation was loose and indefinite, and the jury, we think, might well find, as they did, that no contract was in fact made. But, however this may be, it was a question of fact for the jury ; and, we think, they were in no respect misdirected.

*Exceptions overruled*